UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRACY DUPREE, | |
| Plaintiff, | |
| v. | Case No. 12-cv-576-JPG-DGW |
| NATIONAL ASSOCIATION OF LETTER CARRIERS, AFL-CIO, and UNITED STATES POSTAL SERVICE, | |
| Defendants. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant National Association of Letter Carriers, AFL-CIO ("NALC") (Doc. 32). Plaintiff Tracy Dupree has responded to the motion (Doc. 35), and NALC has replied to that response (Doc. 39).

**I.   Standard for Summary Judgment**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

**II.  Facts**

As a preliminary matter, NALC argues the Court should disregard certain statements contained in Dupree's affidavit in opposition to summary judgment because they are speculative, conclusory or hearsay. In ruling on a motion for summary judgment, the Court considers only evidence that would be

admissible or usable at trial.  *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Hearsay cannot be used to oppose a motion for summary judgment.  *Id*.  Affidavits must be based on personal knowledge.  Fed. R. Civ. P. 56(c)(4).  To the extent statements in Dupree's affidavit are hearsay or otherwise not based on her personal knowledge, the Court will disregard them.

That being said, the competent evidence in the file, viewed in Dupree's favor, establishes the following relevant facts for the purposes of this motion.

Dupree is a member of NALC Branch 319 and worked for the defendant United States Postal Service ("USPS") in its East St. Louis, Illinois, post office.  NALC is the exclusive bargaining representative of Dupree and others in the collective bargaining unit with respect to their employment with the USPS.  NALC and the USPS had negotiated a national collective bargaining agreement ("CBA") that required just cause for discipline or discharge, CBA Art. 16 § 1 and provides that unresolved grievances may be arbitrated, CBA Art. 15 § 3.

On November 8, 2010, Dupree was unable to report to work because of a medical problem.  She called in sick and requested eight hours of sick leave.  Fourteen other employees also called in sick that same day.  The absence of so many employees adversely impacted the operations at the East St. Louis post office.  After Dupree returned to work the following day, her supervisor asked her for medical documentation to support her request for sick leave, although the CBA only required medical documentation for absences of more than three days.  Dupree offered to go to the doctor immediately, but her supervisor told her that was not necessary.

At some point, the USPS began to suspect that Dupree had organized a "sick-out" – organized action where multiple employees call in sick on the same day – on November 8, 2010, to protest car thefts from the East St. Louis post office property.  The USPS Office of the Inspector General ("OIG") investigated the matter, speaking with numerous witnesses including Dupree and coworker Willie Frazier.  The OIG eventually issued a lengthy report summarizing its investigation.  The report noted

that three witnesses had stated Frazier had solicited them to participate in the sick-out. The report further stated that it was possible that Frazier had sent a November 7, 2010, text message encouraging employees to call in sick. Some statements in the report also implicated Dupree as an instigator of the sick-out.

Information uncovered by the OIG's investigation was the basis for the USPS's decision to terminate Dupree and eleven other bargaining unit members. In early May 2011, the USPS issued Dupree a Notice of Removal telling her she would be terminated from her job for conduct unbecoming of a postal employee. The Notice specifically cited untruthful answers she provided to the OIG during her first of two interviews and her contacting employees to inform them to call in sick on November 8, 2010. NALC grieved this discipline all the way through arbitration claiming that there was no just cause for Dupree's discharge.

NALC designated Kenneth R. Miller, an experienced arbitrator, to represent Dupree at the arbitration hearing. Miller also represented five other bargaining unit employees in their arbitration over discipline issued as a result of the sick-out, all of which had occurred prior to Dupree's hearing. In preparation for Dupree's hearing, he familiarized himself with Dupree's grievance file and with the OIG report. Miller also met with Dupree in person one time the week before the hearing for about a half hour.[1] At that meeting, he read the two statements Dupree had given during the OIG investigation, listened to her explain what happened from November 6 to November 8, 2010, and advised her how to dress for the hearing. He also told her that the statements others had made against her in the OIG investigation did not matter because the arbitrator would base his decision on the credibility of the witnesses at the hearing. Miller was aware that Ed Hawkins had stated the OIG coerced him into making a statement against Dupree.

Later, Miller spoke on the phone with Dupree to convey a settlement offer from the USPS: it

---

[1] Miller and Dupree disagree about how Miller prepared her for the hearing, but on summary judgment, the Court must accept Dupree's version of the events.

would drop the sick-out participation charges against bargaining unit employees Hawkins (a male) and John Frawley (a white male), both accused of participating in the sick-out, if Dupree and Reenai Mason, another bargaining unit employee suspected of instigating the sick-out, would voluntarily resign. NALC encouraged Dupree to accept the settlement, but she refused. Miller states that Dupree's race played no role in his representation of her and that there was no "secret deal" between NALC and the USPS to benefit other bargaining unit members.

Prior to the arbitration hearing, several employees who had received Notices of Removal were allowed to return to work, including Hawkins and Frawley.

Dupree's arbitration occurred on February 10, 2012. While NALC and the USPS had the right to request that a court reporter transcribe the proceedings, neither did, which was the standard procedure in arbitration hearings. Miller did not know which witnesses the USPS would call prior to the hearing. At the hearing, Miller argued that Dupree provided medical documentation of her November 8, 2010, absence but the USPS lost it; Dupree did not organize the sick-out; the only evidence Dupree was an organizer of the sick-out was inconsistent, circumstantial and/or suspect evidence; discharge was too harsh of a penalty even if Dupree did something wrong; and the Notice of Removal was not timely.

Dupree testified at the hearing, but Miller did not call any other witnesses to testify in her favor because, in light of the potential witnesses' statements in the OIG report, which was admitted at the hearing, Miller thought their testimony might be detrimental to Dupree's cause. Miller only cross-examined one of the five USPS witnesses.[2] He did not cross-examine Frazier, who gave testimony inconsistent with some of the statements he had made to the OIG during the investigation, or Jane Moeller, who could have testified that there was no legitimate reason to wait to request medical documentation until Dupree returned to work. In addition, seven people who gave statements in the OIG's investigation, including Dupree, submitted written statements in the case file saying that the OIG

---

[2] Again, the Court must accept Dupree's version of the events at the hearing.

4

report did not represent their statements accurately. Miller submitted a post-hearing brief, which was beyond the normal practice.

On April 1, 2012, the arbitrator found in favor of the USPS and denied Dupree's grievance. The arbitrator found that Dupree (1) had not provided medical documentation of her November 8, 2010, illness because there was none in the record and (2) was actively involved in organizing the November 8, 2010, sick-out. The arbitrator further found (3) the penalty of discharge was not excessive in light of Dupree's abuse of sick leave *and* conspiratorial action intended to cause an inappropriate work stoppage, (4) the circumstantial or derivative nature of some evidence was overcome by the persuasiveness of sworn statements and live testimony regarding Dupree's conduct, and (5) the six-month delay between Dupree's conduct and the Notice of Removal was reasonable in light of the lengthy OIG investigation and report and in light of the lack of prejudice to Dupree. The arbitrator noted at one point in the award that NALC "left no stone unturned in the defense of this Grievant." Arb. Award at 11.

In May 2012, Dupree filed this lawsuit. In Count I of the amended complaint (Doc. 17) she seeks to vacate the arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. In Count II, she alleges NALC breached its duty of fair representation in failing to negotiate a CBA provision requiring transcripts of arbitration hearings and in conducting the arbitration in a manner that was arbitrary, discriminatory and in bad faith. See *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Presumably, these claims also include a claim against the USPS for breach of the CBA – a hybrid claim – since, in the grievance-arbitration context, a claim against a union for breach of duty cannot succeed unless the plaintiff also proves a case against the employer for breach of the CBA under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *See, e.g., Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554 (1976); *Miller v. Gateway Transp. Co.*, 616 F.2d 272 (7th Cir. 1980). An "employee's claim against the union and his claim against the employer are interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997); *accord DelCostello*

5

*v. International Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983)

NALC asks the Court for summary judgment on Count II for breach of the duty of fair representation on the basis that NALC's representation of Dupree was reasonable and that Dupree cannot show that but for NALC's alleged breach, the results of the arbitration would have been different. NALC also asks for summary judgment on Count I to vacate the arbitration award because Dupree has no standing under the FAA to bring such a claim.

**III.    Analysis**

    A.    <u>Count II:   Duty of Fair Representation</u>

An employee may bring a claim for breach of the union's duty of fair representation for a union's conduct in pursuing a grievance or for negotiating a collective bargaining agreement. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *Vaca v. Sipes*, 386 U.S. 171 (1967); *see Ford Motor Co. v. Huffman,* 345 U.S. 330 (1953) (negotiation); *Steele v. Louisville & Nashville R. Co.,* 323 U.S. 192 (1944). This duty arises because the union is the exclusive agent of all bargaining unit members and must therefore "serve the interests of all members without hostility or discrimination toward any, . . . exercise its discretion with complete good faith and honesty, and . . . avoid arbitrary conduct." *Vaca*, 386 U.S. at 171;  *see Steele,* 323 U.S. at 202 ("[T]he exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf.").

A union violates its duty of fair representation when its conduct is arbitrary, discriminatory or in bad faith.  *O'Neill*, 499 U.S. at 67 (citing *Vaca*, 386 U.S. at 190).   To withstand a motion for or summary judgment, a plaintiff must point to evidence of at least one of these elements.  *Filippo v. Northern Ind. Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1998).   In addition, the plaintiff must show she was actually harmed by the union's conduct.  *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176-77 (7th Cir. 1995).   For example, in the grievance context, the plaintiff must show that had the union acted differently – say, called different witnesses, examined evidence better, conducted cross-examination,

6

spent more time preparing for the arbitration – the outcome of the arbitration would probably have been different. *Id.* at 1177

"[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness,' . . . as to be irrational." *O'Neill*, 499 U.S. at 67 (quoting *Huffman,* 345 U.S. at 338). If there is any rational reason for the union's conduct, it cannot be found to be arbitrary. *Filippo*, 141 F.3d at 748. In the context of pursuing a grievance on behalf of an employee, "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion." *Vaca*, 386 U.S. at 191. On the contrary, it "must provide some minimal investigation of employee grievances, but the thoroughness of this investigation depends on the particular case, and only an egregious disregard for union members' rights constitutes a breach of the union's duty." *Filippo*, 141 F.3d at 748 (internal quotations omitted). It may also consider things like the allocation of its own limited resources and its relationship with other employees and the employer. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003). This standard is extremely deferential to the union's judgment and requires more than mere negligence or malpractice. *Id.* (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73 (1990)); *Garcia*, 58 F.3d at 1176. Even if it is clear in hindsight that the union should have done things differently, there is no breach of the duty of fair representation unless the union's conduct was irrational. *Id.* at 1177.

A union violates the duty of fair representation if its discrimination against a worker is "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); *see Pryner v. Tractor Supply Co.*, 109 F.3d 354, 362 (7th Cir. 1997) (discrimination must be invidious). Finally, bad faith generally connotes "[d]ishonesty of belief or purpose." *Black's Law Dictionary* 149 (8th ed. 2004). The bad faith determination requires inquiry into the subjective motivation behind a union's conduct. *O'Neill*, 499 U.S. at 74-75.

The Court now turns to the specific ways Dupree alleges NALC was deficient. She criticizes Miller for not spending enough time preparing her for the arbitration, for recommending Dupree accept a settlement offer that benefitted two other employees, for not requesting a transcript of the hearing, for not calling any witnesses on her behalf, and for only cross-examining one of the USPS witnesses. She also suggests NALC was deficient in its collective bargaining on behalf of the bargaining unit by failing to obtain a CBA clause providing for transcripts of arbitrations.

    1.    <u>Preparation for Arbitration</u>

Dupree believes Miller's thirty-minute meeting with her, mostly focusing on what she should wear, one week before the arbitration was insufficient to prepare her for the arbitration. In that meeting, he reviewed her two prior statements in the OIG investigation and listened to her explain her version of the events. He also told her the statements would not matter because the arbitrator would concentrate on the credibility of the witnesses at the hearing.

This preparation was reasonable. Miller was by that time familiar with the OIG report and the relevant evidence, having represented five other employees in arbitrations about the same incident prior to Dupree's arbitration. He reviewed with her the key evidence that might be used to discredit her live testimony – her two prior, somewhat inconsistent, statements – and confirmed her current version of the events, which presumably reflected how she would testify at the hearing. He also advised her how to dress at the hearing, a factor which, for better or for worse, can influence a fact-finder's credibility decision. His strategic judgment call about Dupree's best chance for a favorable arbitration result was not to worry about the prior OIG investigation statements of others, for that was water under the bridge that could not be changed, and to focus instead on maximizing Dupree's credibility at the hearing. This was a reasonable strategy. That it was not successful does not mean it was irrational at the time.

Dupree also suggests Miller gave her short shrift in arbitration preparation because of her gender

8

and race.[3]  She alleges Miller "took great care" in preparing the arbitration case for Frawley, a white male employee who won his arbitration and was returned to work.  Even assuming Dupree had personal knowledge of Frawley's interactions with Miller such that she could testify about that contact, Dupree has not pointed to anything from which a reasonable juror could find the additional preparation was *because of* sex or race.  There is no direct or circumstantial evidence from which a jury could infer discrimination.  Dupree and Frawley were not similarly situated in a number of ways.[4]  For example, Frawley's arbitration occurred before Dupree's.  It is reasonable to expect Miller to prepare more for Frawley's case and not to have to repeat the same preparation for Dupree's case involving many of the same events.  Additionally, there was evidence Dupree was an organizer of the sick-out and had already given inconsistent statements to the OIG, while Frawley was only accused of being a participant in the sick-out.  Dupree has not pointed to anything demonstrating that Miller's preparation of each was based on sex or race as opposed to a decision to devote union resources to the earlier arbitration of an employee with a better chance of having his discipline reversed.  Dupree has simply not provided any evidence Miller selected his level of preparation based on sex or race.

Additionally, although Dupree claims Miller "never prepared [her] for the hearing," she has not even suggested how additional or different preparation would have had a reasonable probability of changing the result of the arbitration.  For these reasons, the Court finds Dupree has failed to present evidence from which a reasonable jury could find Miller's preparation of Dupree for the arbitration hearing breached NALC's duty of fair representation because it was arbitrary or discriminatory.

---

[3] Dupree does not state in her complaint or her summary judgment response what her race is.  However, because she compares herself to white employees, the Court gathers she is non-white.
[4] While this is not an employment discrimination case, the Court notes that jurisprudence in that area has crafted a way to establish discrimination where there is no direct or circumstantial evidence.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  That provides useful guidance, but not a hard rule, about what can establish discrimination in other contexts.  One essential element of the *McDonnell Douglas* test is different treatment of a similarly situated person.  The Court finds that to be an appropriate inquiry in this case as well.

2. Settlement Offer

Dupree believes Miller's negotiation for the USPS's offer to reemploy Hawkins and Frawley, accused sick-out participants, in exchange for the voluntary resignation of Dupree and Mason, accused sick-out organizers, was arbitrary. The Court disagrees. The allegations in Dupree's Notice of Removal demonstrate that the OIG report contained substantial evidence that Dupree and Mason were the organizers of the sick-out, thus were likely to be regarded as more culpable in the work stoppage than Hawkins and Frawley, mere participants. Although pursuing Dupree's grievance, NALC represents the union as a whole, and where there are conflicting concerns among union members, NALC sometimes has to make choices favorable to some members and detrimental to others. So long as these choices are not arbitrary or discriminatory, they do not breach the duty of fair representation. Here, NALC negotiated a deal to ensure two less culpable members would be returned to work at the expense of two likely more culpable members. The deal guaranteed two workers' reemployment, allowed two workers to avoid getting fired, and erased the risk of losing all four. While this might not have been the best deal for Dupree, it was not an irrational deal for the union as a whole. Furthermore, as discussed in the prior section, Dupree has not pointed to anything to show that NALC's judgment in recommending this settlement offer was based on gender or race.

3. Transcript

Dupree believes Miller's representation was irrational because he failed to request a transcript of the arbitration proceeding, which would have helped her overturn the arbitration award. This decision was not irrational. It saved NALC and the USPS the costs of transcript preparation and was the standard practice in any arbitration. Dupree has not suggested why her case was so out of the ordinary that it warranted departure from the standard practice. Furthermore, she has not demonstrated how having the transcript would have likely led to a different result. NALC satisfied its duty of fair representation as to this matter.

By the same token, NALC's failure to bargain for a CBA provision requiring that a transcript be prepared in every arbitration was reasonable. Transcripts are expensive and would complicate the grievance procedure, which is designed to quickly and smoothly resolve workers' complaints. It was reasonable to forego an additional expense for the sake of efficiency.

      4.    <u>Witnesses</u>

Dupree argues Miller's representation of her at the hearing was perfunctory since he did not call any witnesses (other than Dupree) and only cross-examined one of the USPS witnesses. She notes he did not even know who the USPS witnesses would be before the arbitration began so he could prepare an adequate cross-examination. No evidence suggests Miller's representation was perfunctory or was not a good faith effort on behalf of NALC to represent Dupree.

The decision not to call additional witnesses in Dupree's favor was not irrational. Miller was familiar with the massive OIG report containing multiple statements from various witnesses implicating Dupree. In his judgment, their testimony might have hurt Dupree's case. For example, they might have confirmed statements they made to the OIG against her. They also might have been able to explain inconsistencies that would make their prior statements against Dupree appear more credible or to give further inconsistent statements that would make their prior statements in Dupree's favor less credible. Miller appreciated these risks and thought it was not worth it to roll the dice. Additionally, Dupree has not specified what witnesses Miller could have called, what their testimony would have been and how that would have created a reasonable probability that the result of the arbitration would have been different. Without this information, the Court cannot say NALC violated its duty of fair representation by failing to call more witnesses.

As for the decision to cross-examine only one of five witnesses, that too was not an irrational decision. Dupree argues Miller should have cross-examined Frazier about his efforts to solicit participation in the sick-out or about the OIG's conclusion that Frazier could have sent one of the text

11

messages soliciting participants.  Again, there were risks that Frazier could have confirmed statements detrimental to Dupree about their conversation prior to the sick-out, and no guarantee that Miller had a basis for impeaching him.  Additionally, evidence about Frazier's participation in soliciting sick-out participants and that he could have been responsible for the text message was already in the OIG report.  Raising this again at the hearing would have been redundant.  As for the origin of text message, the arbitrator noted Miller argued the evidence was too circumstantial to support the discipline of termination.  The arbitrator ultimately agreed with Miller that the text message would not have supported termination without other, more direct evidence like sworn statements and testimony.  Miller's decision to focus on the circumstantial nature of the text message, an argument the arbitrator accepted, rather than highlight the issue with an unpredictable – or at least a predictably unfavorable – witness was a reasonable decision and not at all irrational.

Dupree also argues Miller was deficient for failing to cross examine Moeller, one of Dupree's supervisors, who could have testified that there was no legitimate reason to wait until Dupree returned to work to ask for medical documentation of her November 8, 2010, illness.  This is an irrelevant issue.  The rationale for *when* Moeller asked Dupree for her medical documentation is irrelevant to the main issue regarding her absence:  whether she provided medical documentation.  Miller's choice not to spend time on a purely collateral issue was reasonable.

Viewing Dupree's arguments as a whole, she seems to believe essentially that NALC did not represent her fairly because Miller was not able to come up with favorable evidence or to defuse unfavorable evidence, yet she has not specified how he could have done any of this such that there is a reasonable probability the arbitrator would have reached a different result.  Miller played the hand he was dealt, and did not play it in a perfunctory, irrational or discriminatory way.  The arbitrator, who is in the best position to judge representation performance at an arbitration hearing, even noted that Miller left no stone unturned when defending Dupree.  There is simply no basis for finding a breach of the duty of

fair representation in this regard.

In sum, Dupree has not pointed to any evidence from which a reasonable jury could find NALC's representation was arbitrary, discriminatory or in bad faith. Accordingly, she cannot prevail on her claims against NALC for breach of the duty of fair representation or against the USPS for breach of the CBA.

B. Count I: Vacating Arbitration Award

Dupree asks the Court to vacate the arbitration award pursuant to the FAA, 9 U.S.C. § 10(a)(4), on the grounds that the arbitrator exceeded his power or so imperfectly executed his power that a mutual, final and definite award was not made. NALC argues that Dupree lacks standing to challenge the arbitrator's award because only a party to the arbitration may seek vacation of an award, and only NALC and the USPS were parties to Dupree's arbitration. Dupree did not respond to this argument and has therefore waived any objection.

Individual employees do not have standing to challenge the result of arbitration proceedings between their union and their employer unless there was fraud or deceit or the union did not fairly represent them. *Anderson v. Norfolk & W. Ry. Co.*, 773 F.2d 880, 882 (7th Cir. 1985); *see Shores v. Peabody Coal Co.*, 831 F.2d 1382, 1383-84 (7th Cir. 1987). The FAA authorizes the Court to vacate an arbitration award "upon the application of any party to the arbitration." 9 U.S.C. § 10(a). The arbitration award in this case clearly shows that the parties were the USPS and NALC, not Dupree. Dupree does not allege fraud or deceit, and the Court has determined as explained above that NALC fairly represented Dupree in that proceeding. Accordingly, Dupree lacks standing to challenge the arbitration award.

C. USPS

There is no evidence in the record that service of process has been effected upon the USPS within 120 days after the filing of the complaint, as prescribed by Federal Rule of Civil Procedure 4(m).

Accordingly, the Court will order Dupree to show cause why her claims against the USPS should not be dismissed without prejudice for failure to timely effect service.

## IV. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** NALC's motion for summary judgment (Doc. 32);

- **ORDERS** Dupree to **SHOW CAUSE** on or before June 25, 2013, why her claims against the USPS should not be dismissed without prejudice for failure to timely effect service. Failure to respond in a timely manner to this order will result in dismissal of those claims; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: June 11, 2013**

                                       s/J. Phil Gilbert
                                       **J. PHIL GILBERT**
                                       **DISTRICT JUDGE**